**In re John Wesley RONEMUS, Pamela Jean Ronemus, Debtors.**

**John Wesley RONEMUS, Pamela Jean Ronemus, Plaintiffs,**

v.

**FTB MORTGAGE SERVICES, Defendant.**

**Bankruptcy No. 190–10365–13.**
**Adversary No. 196–1014.**

United States Bankruptcy Court, N.D. Texas, Abilene Division.

Oct. 23, 1996.

Marc McBeath, Sweetwater, TX, for Debtors.

W.A. Marty Lacouture, Barrett, Burke, Wilson, Castle, Daffin & Frappier, L.L.P., San Antonio, TX, for FTB.

Walter O'Cheskey, Chapter 13 Trustee, Lubbock, TX.

## MEMORANDUM OF OPINION ON MORTGAGE PAYMENTS

JOHN C. AKARD, Bankruptcy Judge.

John Wesley Ronemus and Pamela Jean Ronemus (Debtors) who were the Debtors in a Chapter 13 case, No. 190–10365, filed this adversary proceeding. The confirmed Chapter 13 plan called for two delinquent home mortgage payments owing to FTB Mortgage Services (FTB)[1] to be paid through the plan with distributions by the Chapter 13 Trustee. Later it was discovered that one postpetition mortgage payment had been overloaded and the parties agreed to an order allowing that payment, together with associated late charges, FTB's attorney's fees and costs to be paid through the plan with distributions by the Trustee over the remaining life of the plan. The Debtors increased their monthly payments to the Trustee to accommodate this additional debt. The Chapter 13 case was very successful, the Debtors made their Chapter 13 payments regularly, and they received a discharge on November 20, 1995.[2]

---

1. During a portion of the Chapter 13 case, the mortgage was serviced by Sunbelt National Mortgage Corp. FTB is the successor, by merger, to Sunbelt. For convenience, the court will refer to both entities as FTB.

2. The Trustee's Final Report shows that this was a five year plan under which the Debtors paid

The Chapter 13 case was reopened to permit them to file this adversary proceeding.

During the Chapter 13 case the Debtors timely made their mortgage payments to FTB, except for two occasions. On those occasions, the Debtors contacted FTB in advance and secured permission to delay one mortgage payment on the condition that the following month they pay two mortgage payments and one late charge of approximately $25.00. They did so.

The complaint in this adversary proceeding seeks injunctive relief, a declaratory judgment, and damages against FTB.[3] After hearing the testimony and reviewing the evidence presented at trial, the court finds this to be the most egregious case of creditor overbearing and creditor harassment that this court has seen in ten years as a bankruptcy judge. Not only did FTB fail to maintain adequate records, it failed to obey orders of this court, and violated the discharge injunction as well.

The only conclusion the court can draw from the testimony and evidence presented is that FTB's records were in disarray. The schedule which FTB introduced at trial was an extract made from FTB's records by an employee of FTB. It is not an original record so the court cannot rely upon it as reflecting FTB's records. Additionally, the extract contained errors which bring its accuracy into question. FTB's witness stated that the items about which the Debtors complained had been credited to the Debtors' account. She offered no records to support that statement. Such an unsubstantiated statement carries less weight than the August 28, 1995 letter from an attorney for FTB to the Debtors' attorney, admitted into evidence, which stated "I have checked with FTB Mortgage Services & was advised that the above-referenced loan is current postpetition." Yet a few months after that letter,[4] FTB initiated a course of harassment against these Debtors during which it insisted that the loan was not current, leaving the Debtors in constant fear of losing their home. For these reasons, the court cannot place any credibility in FTB's records or in its testimony.

The evidence in this case shows the following:

1. The payments FTB received from the Debtors and from the Chapter 13 Trustee were not promptly applied to the Debtors' note. That failure resulted in unnecessary and improper accrual of interest on the note. As a result of the improper accrual of interest, the principal of the note was not reduced as it should have been.

   FTB's witness stated that it placed payments received from the Chapter 13 Trustee in a "suspense" account until they equaled a regular Note payment, at which time it applied them on the loan. She stated that their computer program required this procedure. FTB's attempt to evade its obligation to promptly apply those payments by blaming its actions on a computer cannot be tolerated. The computer program could and should have been adjusted. Further, FTB offered no reconciliation of the monies placed in suspense. From the evidence presented, the court cannot determine if all payments made by the Debtors and by the Chapter 13 Trustee were properly accounted for and properly applied to the Debtors' note.

2. FTB charged a $60.00 filing fee to the Debtors' escrow account without permission of the court.

3. When the court authorized reimbursement to FTB of attorneys fees and expenses, they were to be paid by the Trustee over the remaining life of the plan.[5] Instead, FTB immediately paid

---

$28,868.80 to their creditors. Unsecured creditors received 45.97% of their claims.

**3.** This court has jurisdiction of this matter under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(O).

**4.** During the intervening months, the Debtors timely made their mortgage payments.

**5.** Order Approving First Amended Modified Plan entered April 30, 1992.

itself out of the Debtors' escrow account. That was a direct violation of this court's order. Further, its actions threw the escrow account into a negative position, which resulted in a demand from FTB that the Debtors increase their monthly payments by $55.00 per month. The Debtors paid this additional $55.00 per month for at least a year. Thus the Debtors were severely damaged by FTB's violation of this court's order.

4. Because FTB continued to assess unauthorized late charges, many of the Debtors' payments were placed in suspense. Thus the Debtors were injured by increased interest charges as a result of FTB's collection of unauthorized late charges and FTB's failure to properly apply the Debtors' timely payments to the reduction of principal.

5. The court signed the Debtors' discharge on November 20, 1995. On December 8, 1995 (less than 20 days after the discharge) FTB wrote the Debtors demanding $298.47 in late fees incurred "during the course of your bankruptcy." That action constitutes a clear violation of the discharge injunction.

6. On December 20, 1996 the Debtors' attorney wrote to FTB about its claim for late charges. Instead of responding to him, FTB sent the Debtors a late notice which they received on December 29, 1995. This note demanded $156.68 in late charges and stated that the December 1, 1995 payment had not been made. The check for the Debtors' December payment was timely and had cleared FTB's bank before this notice was sent.

7. The Debtors' attorney wrote to FTB on January 2, 1996 and again on January 23, 1996. FTB responded to neither letter.

8. On January 22, 1996 the Debtors received a late notice with respect to their January 1, 1996 payment and a demand for $185.11 in late charges. The Debtors' January payment cleared the Debtors' bank account before the date of this notice.

9. Delinquent payment notices and demands for late payment fees in various amounts continued with regularity through July 2, 1996, even though this adversary proceeding was filed May 13, 1996.

10. In January or February 1996 the Debtors began receiving telephone calls from FTB's collectors. Each time, the Debtors referred the caller to the Debtors' attorney but none of the collectors contacted the attorney. In March 1996 Mr. Ronemus, one of the Debtors, received a very insulting call from one of FTB's collectors. In that call the Debtor was called names and cussed out. FTB's witness stated that it is company policy not to use such language. No doubt the company has such a policy, but whether it is followed is another matter. The court finds the Debtor's testimony about this matter to be credible.

There is no doubt that these Debtors were substantially damaged by FTB's actions. The question now is how to remedy the situation. There is no evidence before the court of an opportunity to refinance this note with another company. Therefore, the court concludes that the next best thing is to draw a line and start over. The only evidence as to the principal balance of the note is a statement in FTB's letter of June 11, 1996 which stated that after the August 1, 1996 payment, the principal balance would be $53,-822.25. For the reasons outlined above, the court finds that figure to be artificially inflated. Presumably the Debtors paid their September 1, 1996 payment.

Therefore, with respect to drawing the line, the court orders as follows:

1. The Debtors shall timely make their October 1 and November 1, 1996 payments. The September, October, and November payments shall be applied first to the current escrow deposit, second to accrued interest on the note at the unaccelerated note rate, and third to principal, using $53,822.25 as the August 1, 1996 principal balance. No portion of those payments shall be applied to late charges or other charges.

2. On November 5, 1996, this note shall be set up on a new ledger and given an entirely new account number. The principal balance shall be the amount calculated as described above, less the sum of $10,000 which the court finds is reasonable and necessary to compensate the Debtors for unnecessary interest, unauthorized charges, and harassment of the Debtors by FTB. Interest on this new balance shall accrue at the unaccelerated note rate beginning November 1, 1996. The monthly payments of principal and interest shall remain as provided by the original note. All payments shall be applied first to accrued interest and then to the principal. The Debtors shall have the right to make additional payments or to pay off the note at any time, both without any premium or penalty. When the new balance, together with accrued interest thereon, has been fully paid, FTB shall promptly issue the Debtors a full release of the original note and all liens securing it, without charge to the Debtors.

3. Prior to November 5, 1996, FTB shall furnish to the Debtors' attorney a receipt showing full payment of the 1996 ad valorem taxes on the property involved. That payment may be made from the existing escrow account to the extent that there are funds in that account. If the funds in the escrow account are insufficient to pay the taxes in full, FTB shall pay the balance from its own funds.

4. On November 5, 1996, the old escrow account shall be canceled and any funds in that account shall become the property of FTB. If there is a negative balance in the escrow account on that date, FTB shall cancel the balance. On that same date, FTB shall set up a new escrow account from its own funds for the benefit of the Debtors. FTB shall immediately fund that account in an amount equal to the 1996 ad valorem taxes on the property involved and the 1996 insurance paid on the property, plus $\frac{1}{6}$th of the total amount. Thus, the escrow account will be funded to the industry standard of one year's taxes and insurance plus two month's deposit. The funds in that escrow account shall immediately become the property of the Debtors. Beginning with the payment due December 1, 1996, the Debtors shall deposit each month to the escrow account $\frac{1}{12}$th of the 1996 taxes and insurance. Beginning with the year 1998, the escrow account may be adjusted, not more than annually, in accordance with the Deed of Trust securing the note.

5. No later than November 6, 1996 FTB shall furnish to the Debtors' attorney the following:

   a. Proof of full compliance with this court's order, including copies of new ledger pages for the note in question and the escrow account.

   b. A new payment book for the Debtors showing the new account number and the new balance on the note.

6. FTB, its successors and assigns, are enjoined from taking any action whatsoever to attempt to collect from the Debtors, their heirs or assigns, any sums due prior to November 5, 1996 with respect to the note in question and/or with respect to any document securing said note. The only exceptions are the October 1 and November 1, 1996 payments described above, and the new principal balance with interest thereon from November 1, 1996.

The Debtors have suffered substantial expenses for attorney's and accountant's fees in this matter. They will incur additional attorney's fees in winding up this matter. Therefore, the court awards the Debtors a judgment against FTB for $3,000.00 toward their attorney's and accountant's fees. Such sum shall be paid to the Debtors' attorney by November 5, 1996. Should FTB appeal this matter, the court reserves the right to award additional attorney's fees and expenses to the Debtors.

All costs of court in this proceeding are taxed against FTB. All other relief requested by either party is denied.

JUDGMENT ACCORDINGLY.[6]

---

**6.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to FED. R.BANKR.P. 7052. This Memorandum will be published.